IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **CITY OF LORAIN, OHIO,** | MDL No. 2:18-mn-2873-RMG |
|   **Plaintiff,** | This Document Relates To: |
|   **v.** | **Case No.** 2:23-cv-05092-RMG |
| **AGC CHEMICALS AMERICAS INC.;** | **COMPLAINT** |
| **ANGUS FIRE ARMOUR CORPORATION;** | **JURY TRIAL DEMANDED** |
| **ARCHROMA U.S., INC.;** | |
| **ARKEMA INC.;** | |
| **BASF CORPORATION;** | |
| **BUCKEYE FIRE EQUIPMENT CO.;** | |
| **CARRIER GLOBAL CORPORATION;** | |
| **CHEMDESIGN PRODUCTS, INC.;** | |
| **CHEMGUARD, INC.;** | |
| **CHEMICALS INC.;** | |
| **CHUBB FIRE, LTD.;** | |
| **CIBA, INC. (F/K/A CIBA SPECIALTY CHEMICALS CORPORATION);** | |
| **CLARIANT CORP.;** | |
| **DEEPWATER CHEMICALS, INC.;** | |
| **DYNAX CORP.;** | |
| **KIDDE FIRE FIGHTING, INC.;** | |
| **KIDDE PLC INC.;** | |
| **NATIONAL FOAM, INC. (A/K/A CHUBB NATIONAL FOAM);** | |
| **NATION FORD CHEMICAL COMPANY;** | |
| **RAYTHEON TECHNOLOGIES CORPORATION;** | |
| **THE ANSUL COMPANY;** | |
| **TYCO FIRE PRODUCTS LP;** | |
| **UTC FIRE & SECURITY AMERICAS CORPORATION, INC.;** | |
| **WILLIAMS FIRE & HAZARD CONTROL, INC;** | |
| **JOHN DOE DEFENDANTS 1-50,** | |
|   **Defendants.** | |

Plaintiff, City of Lorain, Ohio, files this Complaint against the Defendants named herein and in support thereof alleges as follows:

## SUMMARY OF THE CASE

1.      Plaintiff brings this action for damages, contribution and reimbursement of costs incurred, and which continue to be incurred, to address the presence of Per- and polyfluoroalkyl substances or "PFAS" chemicals—including but not limited to Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorohexanoic acid ("PFHxA"), Perfluoroheptanoic acid ("PFHpA"), Perfluorohexanesulfonic acid ("PFHxS"), Perfluorobutanesulfonic acid ("PFBS"), Perfluorononanoic acid ("PFNA"), as well as any and all hazardous chemicals produced by Defendants (collectively referred to herein as "PFAS"), — in the City of Loraine, Ohio, public water supply system and in the groundwater that serves as supply sources for that system.  As the manufacturers and sellers of products that contain PFAS compounds, Defendants have discharged PFAS into, or are otherwise responsible for PFAS released into, the waters that serve as the supply sources for Plaintiff's public water supply systems.

2.      For years, Defendants manufactured, sold, and distributed PFAS compounds and products containing PFAS chemicals.  These products include the firefighting suppressant agent, Aqueous Film Forming Foam ("AFFF") that contains those compounds, for use at airports, military facilities, and other locations throughout the State of Ohio.

3.      Defendants knew, or should have known, that PFAS and related constituents in Defendants' products and by-products present unreasonable risks to human health, water quality, and the environment and of the dangers associated with these compounds. Yet, Defendants handled, discharged, and were otherwise responsible for the release of PFAS into the environment

without sufficient containment, caution, warning, testing, or use of alternative feasible products or components.

4.      Defendants designed, manufactured, marketed, distributed, and/or sold AFFF Products knowing that the PFAS in these Products would be released into the environment during fire protection, training, and response activities, even when used as directed and intended by Defendants. Despite their knowledge, Defendants kept this information hidden from the public, including the Plaintiff.

5.      Defendants' acts and omissions resulted in PFAS seeping into the groundwater and surface water and into a flow zone adjacent to the Plaintiff's raw water sources. As a result of the occurrence of PFAS in the environment from Defendants' products, Plaintiff has been and will be required to fund and implement capital costs, and has and will in the future incur ongoing operation and maintenance costs.

6.      With regard to the Defendants' tortious and wrongful conduct herein alleged, the Defendants used the U.S. mail, interstate wires, federal and state judicial systems, regulatory filings and testimony, and other vehicles to promote, conceal, protect, and continue their tortious and wrongful conduct over many, many years.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under federal diversity, pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount-in-controversy exceeds $75,000.

8.      Plaintiff brings this civil action directly in In Re: Aqueous Film-Forming Foams Products Liability Litigation, Multi-District Litigation ("MDL") No. 2873. Plaintiff files directly in this venue, the United States District Court for the District of South Carolina, Charleston

Division, as allowed under the provisions of Paragraphs 25-29 of this Court's Case Management Order No. 3, dated April 26, 2019 (Doc. # 72). Plaintiff designates the United States District Court for the Northern District of Ohio as its "Home Venue" under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in that District. But for this Court's Order permitting direct filing in this MDL, Plaintiff would have filed in its Home Venue.

9.      Plaintiff is a municipal government entity located in Lorain, Ohio.

10.     Plaintiff owns and operates a water treatment and distribution utility that serves thousands of citizens in and near the Lorain, Ohio region.

11.     Plaintiff's Water Distribution Department is responsible for the maintenance and operation of approximately 325 miles of water mains that delivers an average flow of 11.2 million gallons per day.

12.     Plaintiff is also responsible for 2,811 fire hydrants, 4,037 valves, and the service connection for approximately 23,000 customers.

13.     This action is brought by the Plaintiff to recover damages and seek other redress for harm caused by Defendants' tortious conduct relating to PFAS as outlined herein. Defendants' actions have caused and continue to cause damages to Plaintiff.

## **DEFENDANTS**

14.     The term "Defendants" refers to all Defendants named herein jointly and severally and includes presently unidentified Defendants, herein named as John Does 1-50, whose activities also contaminated and polluted the Plaintiff's raw water sources in same or similar ways as alleged herein, but also other ways such as carrying on their business operations.

15.     Defendant Kidde PLC Inc. ("Kidde") is a Delaware corporation authorized to do business in New York, with principal offices at One Carrier Place, Farmington, CT 06034. Upon

4

information and belief, Kidde was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

16.　　Defendant Kidde Fire Fighting, Inc. ("Kidde Fire Fighting") is a Pennsylvania corporation with principal offices at 400 Main Street, Ashland, MA 01721. Upon information and belief, Kidde Fire Fighting, was formerly known as National Foam, Inc., National Foam System, Inc., and/or Chubb National Foam, Inc.

17.　　Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation, with principal offices at 13995 Pasteur Boulevard, Palm Beach Gardens, FL 33418. Upon information and belief, Carrier was formed in March 2020 when United Technologies Corporation spun off its fire and security business. Upon information and belief, Carrier is the parent corporation of Kidde.

18.　　Defendant National Foam, Inc. (a/k/a Chubb National Foam) (National Foam, Inc. and Chubb National Foam are collectively referred to as "National Foam") is a Pennsylvania corporation, with its principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.

19.　　At all times relevant, National Foam manufactured fire suppression products, including AFFF that contained PFAS compounds for sale and use throughout the United States.

20.　　Defendant Angus Fire Armour Corporation ("Angus Fire") is a Delaware corporation, with principal offices at 141 Junny Road, Angier, NC 27501.

21.　　Defendant The Ansul Company ("Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

22.　　At all times relevant, Ansul manufactured fire suppression products, including AFFF that contained PFAS compounds.

23.     Defendant Tyco Fire Products L.P. ("Tyco") is a Delaware limited partnership with principal offices at 1400 Pennbrook Parkway, Lansdale, PA 19446.  Upon information and belief, Tyco is the successor-in-interest to Ansul, Inc. ("Ansul").

24.     Defendant Chemguard, Inc. is a Wisconsin corporation, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

25.     At all times relevant, Chemguard, Inc. manufactured fire suppression products, including AFFF that contained PFAS compounds.

26.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ.  Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210.  Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

27.     Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC") is a Delaware corporation with principal offices at 13995 Pasteur Blvd., Palm Beach Gardens, FL 33418.  Upon information and belief, UTC was a division of United Technologies Corporation.

28.     Defendant Raytheon Technologies Corporation ("Raytheon") is a Delaware corporation, with principal offices at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Upon information and belief, Raytheon is successor-in-interest to United Technologies Corporation.

29.     Defendant Buckeye Fire Equipment Company ("Buckeye") is a North Carolina corporation, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086.

30.     At all times relevant, Buckeye manufactured fire suppression products, including AFFF that contained PFAS compounds.

31.     Defendant Ciba, Inc. (f/k/a Ciba Specialty Chemicals Corporation) ("Ciba") is a Delaware corporation, with principal offices at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

32.     Defendant BASF Corporation ("BASF") is a Delaware Corporation, with principal offices at 100 Park Avenue, Florham Park, NJ 07932.  Upon information and belief, BASF is the successor-in-interest to Ciba.  Defendant BASF Corporation ("BASF") is a Delaware Corporation, with principal offices at 100 Park Avenue, Florham Park, NJ 07932.  Upon information and belief, BASF is the successor-in-interest to Ciba.

33.     Defendant Dynax Corp. ("Dynax") is a Delaware corporation, with principal offices at 103 Fairview Park Drive, Elmsford, NY 10523.

34.     Defendant Clariant Corp. ("Clariant") is a New York corporation, with principal offices at 4000 Monroe Road, Charlotte, NC 28205.

35.     Defendant Archroma U.S., Inc. ("Archroma") is a Delaware corporation with its principal offices at 5435 77 Center Dr., #10 Charlotte, NC 28217.

36.     Defendant Arkema Inc. ("Arkema") is a Pennsylvania corporation, with principal offices at 900 1st Avenue, King of Prussia, PA, 19406.

37.     Defendant ChemDesign Products, Inc. ("ChemDesign") is a Delaware corporation, with principal offices at 2 Stanton Street, Marinette, WI 54143.

38.     Defendant AGC Chemicals Americas Inc. ("AGC") is a Delaware corporation, with principal offices at 55 E Uwchlan Ave, Suite 201, Exton, PA 19341.

39.     Defendant Chemicals Inc. a Texas corporation, with principal offices at 12321 Hatcherville Road, Baytown, TX 77521.

40.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation, with principal offices at 196122 E County Road 40, Woodward, OK 73801.

41.     Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation, with principal offices at 2300 Banks Street, Fort Mill, SC 29715.

42.     Upon information and belief, Defendants Chemicals, Inc., Deepwater, and Nation Ford designed, manufactured, marketed, distributed, and sold PFAS products containing PFAS for use in the manufacture of AFFF products throughout the United States.

43.     Defendant Williams Fire & Hazard Control, Inc. ("Williams") is a Texas corporation, with principal offices at 9605 Richard Wycoff Drive, Port Arthur, TX 77640.

44.     Upon information and belief, Defendant Williams distributed and/or sold AFFF products containing PFAS throughout the United States.

45.     Upon information and belief, Defendants John Does 1-50 also manufactured, distributed, and/or sold products that contain PFAS compounds.  Plaintiff presently lacks information sufficient to specifically identify the names of Defendants sued herein under the fictitious names DOES 1 through 50.  Plaintiff will amend this Complaint to show their true names if and when they are ascertained.

## PER- AND POLYFLUOROALKYL SUBSTANCES

46.     PFAS compounds are a family of synthetic chemicals, also known as perfluorochemicals ("PFCs"), which have been used for decades to make products that resist heat, oil, stains, grease and water.

47.     PFAS chemicals were created in the 1940s and 1950s and were incorporated into certain products due to their surfactant properties.  Over the years, PFAS chemicals have been sold to multiple companies for use in AFFF and a variety of other products, including stain resistant carpeting and upholstery, clothing, paper packaging for food, water and grease resistant cookware.

48.     AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire-fighting foam in the United States and other parts of the world.  AFFF is a Class-B firefighting foam, which is water-based and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

49.     AFFF is synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants.  When mixed with water, the resulting solution has the characteristics needed to produce an aqueous film that spreads across the surface of a hydrocarbon fuel.  It is this film formation feature that provides fire extinguishment and is the source of the designation, aqueous film forming foam.

50.     PFAS are extremely persistent in the environment and resistant to typical environmental degradation processes.  In addition, they are thermally stable synthetic organic contaminants, are likely carcinogenic, and have been shown to correlate with thyroid disease and immune deficiencies.  PFAS also have high water solubility (mobility) and low biodegradation (persistence).

51.     PFAS, in particular PFOA and PFOS, have been identified as "emerging contaminants" by the United States Environmental Protection Agency ("EPA").  This term describes contaminants about which the scientific community, regulatory agencies and the general public have a new and increasing awareness or understanding about how they move in the environment or affect public health.

52.    PFAS, like other emerging contaminants, have become the focus of active research and study, which means that new information is released periodically regarding the effects on the environment and human health as a result of exposure to the chemicals.

53.    Certain PFAS compounds, such as PFOA (which is also known as "C8" because it contains eight carbon compounds) and PFOS, have been the focus of EPA investigations.

54.    United States EPA studies have indicated that exposure to PFOA and PFOS over certain levels can result in adverse health effects, including but not limited to developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

55.    In January 2009, EPA established a drinking water Provisional Health Advisory Level ("HAL") for PFOA and PFOS, the two PFAS compounds about which it had the most toxicological data.  EPA set the Provisional HAL at 0.4 parts per billion (ppb) for PFOA and 0.2 ppb for PFOS.

56.    In connection with its emerging contaminant studies, EPA implemented an Unregulated Contaminant Monitoring Rule Number 3 in 2012 ("UCMR 3"), which was designed to collect nationwide information regarding the occurrence of PFAS contamination in the public's water supply.

57.    UCMR 3 required sampling of Public Water Systems ("PWSs") serving more than 10,000 people (i.e., large systems) and 800 representative PWSs serving 10,000 or fewer people (i.e., small systems) for 21 chemicals, including a number of PFASs, during one consecutive twelve month period in the timeframe between 2013 through 2015.

58.    Sampling under UCMR 3 used higher reporting limits than would be applicable in light of scientific information and guidance levels developed since that time, which are much lower than those employed in 2008 and 2009.

59.    In addition, the UCMR 3 sampling effort did not combine PFAS levels, thus not taking into account added effects from the presence of more than one PFAS compound.

60.    In May 2016, EPA issued new HALs for PFOA and PFOS, identifying 0.07 ppb (or 70 parts per trillion (ppt)) as the concentration of PFOA or PFOS in drinking water at or below which health effects are not anticipated to occur over a lifetime of exposure. EPA acknowledged then, and continues to acknowledge, that the studies associated with PFAS compounds are ongoing, and as such, the HALs may be adjusted based upon new information.

61.    In EPA's February 2020 PFAS Action Plan:  Program Update, the agency included information on a newly approved laboratory method – Drinking Water Method 533 – for testing and detecting PFAS in drinking water.  This new method allows for more effective measurement of PFAS in drinking water.

62.    In October 2021, EPA released its PFAS Strategic Roadmap, outlining the agency's proposed actions related to PFAS contamination, with a focus on researching PFAS exposures, effects, and interventions, preventing further PFAS contamination, and cleaning up existing PFAS contamination.

63.    On December 27, 2021, EPA published the final fifth Unregulated Contaminant Monitoring Rule, which will require sample collection for 29 PFAS between 2023 and 2025.

64.    On June 15, 2022, EPA issued updated HALs for four PFAS compounds, including final HALs for GenX and PFBS at 10 ppt and 2,000 ppt, respectively, and interim HALs for PFOA and PFOS at 0.004 ppt and 0.02 ppt, respectively.

65. On August 26, 2022, EPA issued a proposal to designate PFOA and PFOS, including their salts and structural isomers, as hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCA"). The public comment period for the proposal closed on November 7, 2022, and EPA is in the process of reviewing comments.

66. Regulatory agencies are also working to determine the extent of PFAS contamination within the state and participating in related discussions with federal, state and local partner agencies.

67. While more studies have been conducted, and thus, more is known regarding PFOA and PFOS, all PFAS compounds have generally demonstrated similar characteristics to PFOA and PFOS.

68. Although some PFAS compounds have been shown to break down, the resulting products typically end at non-biodegradable PFOA and PFOS.

69. As manufacturers, sellers, handlers and dischargers of PFAS compounds, and products containing PFAS, Defendants knew or should have known that the inclusion of PFAS chemicals in any products presented an unreasonable risk to human health and the environment.

70. Defendants knew or should have known that PFAS compounds are highly soluble in water, highly mobile, extremely persistent, and highly likely to contaminate water supplies if released to the environment.

71. Defendants' prior knowledge of the adverse impacts from PFAS compounds to human health and the environment amounts to reckless disregard to human health and environmental safety. Nonetheless, Defendants negligently and recklessly manufactured,

distributed, and/or sold PFAS and products containing PFAS with no warnings or instructions on use or disposal to avoid contamination.

72.     Defendants' actions have directly resulted in contamination of raw water sources that make up Plaintiff's water supply system.  Because Defendants' PFAS has infiltrated the waters that serve as the source for Plaintiff's public water supply system, contamination of Plaintiff's water supply is recurring and continuing.

## PLAINTIFF'S WATER SYSTEM IMPROVEMENTS

73.     Plaintiff is committed to the supply of potable drinking water consistent with federal and state guidelines and requirements.  Plaintiff must therefore implement remedies to assure that the water it supplies to its customers meets these standards.

74.     As a direct result of Defendants' actions, Plaintiff has had to address PFAS contamination.  In doing so, Plaintiff has conducted and continues to conduct sampling, studies and investigations related to PFAS, which requires funding by Plaintiff, including costs for its personnel to supervise the assessments, and costs to develop PFAS treatment scenarios, and costs to analyze available alternatives.

75.     Plaintiff will continue to incur significant costs, for ongoing monitoring and any capital improvements that may be deemed necessary to reduce and/or remove PFAS contamination to assure sufficient non-PFAS impacted water supplies.  Operation and maintenance measures for any such improvements will be required and will add further to the costs Plaintiff has incurred and will incur to address Defendants' PFAS contamination.

## FIRST CAUSE OF ACTION
## Products Liability Design Defect (Ohio Rev. Code § 2307. 75)

76.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as if fully restated herein.

13

77.     Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and selling PFAS Products.

79.     As commercial designers, manufacturers, distributors, suppliers, sellers, and/or marketers of PFAS Products, Defendants had a strict duty not to place into the stream of commerce a product that is unreasonably dangerous.

80.     At the time of manufacture, Defendants knew that the chosen formulation(s) of PFAS Products was not biodegradable, would bioaccumulate in humans and wildlife, and was toxic to humans and the environment.

81.     Defendants were also aware and/or in the possession of an available safer design that was functional and reasonably priced.

82.     Defendants represented, asserted, claimed, and warranted that their PFAS Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

83.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of PFAS Products, Defendants owed a duty to all persons whom Defendants' PFAS Products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

84.     Defendants' PFAS Products used at or near Plaintiffs Property were used in a reasonably foreseeable manner and without substantial changes in the condition in which they were sold.

85.     Defendants knew, or should have known, that use of Defendants' PFAS Products in their intended manner would result in the spillage, discharge, disposal, or release of PFOA,

PFOS, and/or their precursor chemicals into the surface water, soil, sediment and groundwater, thereby contaminating natural resources, including water supplies such as Plaintiffs.

86.    Defendants' PFAS Products used at or near Plaintiffs Property were defective in design and unreasonably dangerous because, among other things: (a) PFOA and PFOS cause soil and water contamination, even when used in their foreseeable and intended manner; (b) even at extremely low levels, PFOA and PFOS render drinking water unfit for consumption; (c) PFOA and PFOS pose significant threats to public health; and (d) PFOA and PFOS create real and potential damage to the environment.

87.    At all times relevant herein, the foreseeable risks associated with the design or formulation of Defendants' PFAS Products exceeded the benefits associated with their design or formulation. These risks were foreseeable at the time the PFAS Products left the control of the manufacturer(s).

88.    At the time of manufacture, there were safer alternative designs that were practical, feasible, cost effective, and advantageous, including not using PFOA, PFOS, and/or their precursor chemicals in their PFAS Products. These practical and technically feasible alternative designs or formulations were available at the time the PFAS Products left the manufacturer(s) and would have prevented the harm caused to Plaintiff without substantially impairing the usefulness or intended purpose of the products.

89.    Plaintiff was, is and will continue to be harmed by Defendants' defectively designed PFAS Products.

90.    The design of Defendants' PFAS Products was a substantial factor in causing harm to Plaintiff.

91.    The gravity of the environmental harm resulting from Defendants' PFAS Products

was, is, and will be enormous because PFOA and PFOS.

92.    The likelihood that this harm would occur was, is, and will be very high because Defendants knew and/or should have known that Defendants' PFAS Products were toxic, could not be contained, and do not readily degrade in the environment.

93.    Defendants committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendants' acts and/or omissions were performed to promote sales of their PFAS Products and with conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the environment and on public health, safety, and welfare.

94.    As a direct and proximate result of Defendants' above described acts and omissions, all of which are violations of applicable state and/or federal laws, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFAS, including but not limited to the investigation, monitoring, treatment, testing, remediation, filtration, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees and costs, diminution of property value, punitive damages, and all other equitable and applicable damages.

## SECOND CAUSE OF ACTION
### Products Liability Failure to Warn (Ohio Rev. Code§ 2307.76)

95.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as if fully restated herein.

96.    Defendants were engaged in the business of researching, designing, manufacturing, formulating, testing, distributing, marketing and/or selling PFAS Products.

97.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of PFAS Products, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by their PFAS Products.

98.     Defendants knew, or in the exercise of ordinary care should have known, that their PFAS Products would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA and PFOS pose to human health and the environment.

99.     Defendants breached their duty to warn by unreasonably failing to provide Plaintiff, public officials, purchasers, downstream handlers, and/or the general public with warnings about the potential and/or actual threat to human health and contamination of the environment by PFOA and PFOS, despite Defendants' knowledge that PFOA and PFOS are a real and potential threat to the environment and human health.

100.    Defendants knew they were providing inadequate warnings and/or instructions about the inherent danger of allowing their PFAS Products to be dispersed into the environment whereby through runoff or permeation through the ground PFAS, including PFOS and PFOA, would foreseeably infiltrate soil, surface water, and groundwater resources, including Plaintiffs water supplies.

101     PFAS Products purchased or otherwise acquired from Defendants were used, discharged, disposed of, and/or released at or near Plaintiff's Property, including Plaintiff's water supplies.

102.    Defendants' PFAS Products were used in a reasonably foreseeable manner and without substantial changes in the condition in which the Products were sold.

103.    Defendants' PFAS Products used at or near Plaintiffs Property were defective in design and due to inadequate warning and were unreasonably dangerous for the reasons set forth

above.

104.    Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of Defendants' PFAS Products at or near Plaintiffs Property, including contamination of Plaintiffs Property with PFOA, PFOS, and/or their precursor chemicals, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards. 107. Defendants failed to act as reasonable manufacturers when presenting their PFAS Products to the public. In particular, Defendants failed to take reasonable precautions such as describing such hazards, or providing any precautionary statements regarding such hazards, in the labeling of their PFAS Products.

108. Defendants committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendants' acts and/or omissions were performed to promote sales of their PFAS Products and with conscious disregard of the probable dangerous consequences of their conduct and its reasonably foreseeable impacts on the environment and on public health, safety, and welfare.

105.    As a direct and proximate result of Defendants' above described acts and omissions, all of which are violations of applicable state and/or federal laws, Plaintiff hasincurred, and will continue to incur, costs and damages related to the contamination of its Property by PFAS, including but not limited to the investigation, monitoring, treatment, testing, remediation, filtration, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees and costs, diminution of property value, punitive damages, and all other equitable and applicable damages.

### THIRD CAUSE OF ACTION
### Trespass

106.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs

as if fully restated herein.

107.    Plaintiff is the owner and operator of a public water supply system and other properties and facilities associated therewith. Defendants knew, or in the exercise of reasonable care should have known, that PFOA and PFOS contaminate water resources, including water resources utilized by and which are the property of public water providers, such as Plaintiff.

108.    Defendants failed to properly warn against the use of PFAS Products such that they proximately caused and continue to cause PFOA and PFOS to contaminate Plaintiffs Property, including but not limited to its groundwater.

109.    The contamination of Plaintiffs Property has varied over time and has not yet ceased. PFOA and PFOS continue to migrate into and enter Plaintiffs Property. The contamination is reasonably abatable.

110.    Plaintiff has not consented to, and does not consent to, this trespass.

111.    Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass. 116. Plaintiff is, was, and will continue to be harmed by this trespass.

112.    Defendants committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendants' acts and/or omissions were performed to promote sales of their PFAS Products and with conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the environment and on public health, safety, and welfare.

113.    As a direct and proximate result of Defendants' above described acts and omissions, all of which are violations of applicable state and/or federal laws, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFAS, including but not limited to the investigation, monitoring, treatment, testing, remediation,

filtration, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees and costs, diminution of property value, punitive damages, and all other equitable and applicable damages.

## FOURTH CAUSE OF ACTION
### Negligence

114.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as fully restated herein.

115.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of PFAS Products, Defendants owed a duty to Plaintiff, as well as to all persons whom Defendants' PFAS Products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of Defendants' PFAS Products.

116.    Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS Products; (b) issued instructions on how PFAS Products should be used and disposed of, thus improperly permitting PFOA, PFOS, and/or their precursor chemicals to enter and contaminate Plaintiff's Property; (c) failed to recall and/or warn the users of PFAS Products of the dangers of soil and water contamination as a result of standard use and disposal of these Products; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of PFAS Products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identities of the purchasers of their PFAS Products.

117.    Plaintiff was a foreseeable victim of the harm caused by Defendants' PFAS Products.

118.     Defendants thereby failed to exercise reasonable case to prevent their PFAS Products from presenting an unreasonable risk to human health and failed to exercise reasonable case to prevent contamination of water supplies, including the Plaintiff's water supply.

119.     Defendants' negligent, reckless, and/or intentional acts and omissions alleged herein contaminated Plaintiff's Property, including its water supply source.

120.     Plaintiff is, was, and will continue to be harmed by Defendants' negligent, reckless, and/or intentional acts and omissions alleged herein.

121.     Defendants committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice; Defendants' acts and/or omissions were performed to promote sales of their PFAS Products and with conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the environment and on public health, safety, and welfare.

122.     As a direct and proximate result of Defendants' above described acts and omissions, all of which are violations of applicable state and/or federal laws, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFAS, including but not limited to the investigation, monitoring, treatment, testing, remediation, filtration, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees and costs, diminution of property value, punitive damages, and all other equitable and applicable damages.

**FIFTH CAUSE OF ACTION**
**Public Nuisance**

123.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as if fully restated herein.

124.    Plaintiff is a public entity and, as such, the water Plaintiff provides to residential and commercial customers is a public and commonly held resource. Members of the public have a right to have their water remain clean, safe, and free of Defendants' PFAS Products.

125.    Defendants designed, manufactured, distributed, marketed, and/or sold their PFAS Products in a manner that created, or participated in creating, a nuisance that unreasonably and substantially interferes with the use and enjoyment of Plaintiff's Property, and unreasonably endangers or injures the health, safety, and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

126.    The unreasonable and substantial interference with the use and enjoyment of Plaintiffs Property includes but is not limited to: the contamination of Plaintiffs Property, including Plaintiffs water supply source; and the exposure to known toxic chemicals manufactured and/or sold by Defendants.

127.    Defendants have, by their acts and omissions set forth above, among other things, knowingly unleashed long-lasting and ongoing PFAS contamination, and threat of PFAS contamination, upon Plaintiffs Property.

128.    Actual and threatened PFAS contamination caused by Defendants' conduct has caused, and continues to cause, injury to Plaintiff in the form of present and serious interference with the use, benefit, and/or enjoyment of Plaintiffs Property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

129.    Defendants substantially interfered with and caused damage to a public or common resource that endangered the use of property, was injurious to the public health, and interfered with the reasonable enjoyment of life or property by an entire community.

130.    Defendants knew that the use and introduction of PFAS Products into the environment would and has continuously, unreasonably and seriously endangered and interfered with the ordinary safety, use, benefit, and enjoyment of Plaintiffs Property.

131.    Defendants committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendants' acts and/or omissions were performed to promote sales of their PFAS Products and with conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the environment and on public health, safety, and welfare.

132.    As a direct and proximate result of Defendants' above described acts and omissions, all of which are violations of applicable state and/or federal laws, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFAS, including but not limited to the investigation, monitoring, treatment, testing, remediation, filtration, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees and costs, diminution of property value, punitive damages, and all other equitable and applicable damages.

**SIXTH CAUSE OF ACTION**
**Private Nuisance**

133.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

134.    Plaintiff is the owner of land, property, and water rights that permit Plaintiff to extract water for use in Plaintiffs water system to provide drinking water to its customers.

135.    Defendants' intentional, negligent, and/or reckless conduct, as alleged in this Complaint, has resulted in the contamination of Plaintiffs Property with PFOA, PFOS, and/or their precursor chemicals and, without intervention by Plaintiff, would render water undrinkable.

23

136.    Plaintiff, as the owner of its Property comprising its public water supply system and as a purveyor of drinking water, has suffered injuries different in kind from the community at large because Plaintiff relies upon its water supply system for its public service functions.

137.    Defendants' manufacture, distribution, sale, supply, and/or marketing of their PFAS Products was unreasonable because Defendants knew, or reasonably should have known, of the dangerous characteristics and properties of PFOA and PFOS, and knew that contamination of public water supplies, such as Plaintiff's, was substantially certain to occur, but failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

138.    The contamination resulting from Defendants' PFAS Products substantially and unreasonably interferes with Plaintiff's property rights to appropriate, use, and enjoy water from its Property.

139.    Defendants committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendants' acts and/or omissions were performed to promote sales of their PFAS Products and with conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the environment and on public health, safety, and welfare.

140.    As a direct and proximate result of Defendants' above described acts and omissions, all of which are violations of applicable state and/or federal laws, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFAS, including but not limited to the investigation, monitoring, treatment, testing, remediation, filtration, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees and costs, diminution of property value, punitive damages, and all other equitable and applicable damages.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, City of Lorain, Ohio, as to each and every count herein, demands judgment against Defendants, and each of them, individually, jointly, and severally, and request the following relief:

a.      A jury trial and finding or declaration that Defendants engaged in the tortious outlined herein and/or willful, wanton, and careless disregard for the Plaintiff;

b.      An award to Plaintiff for all economic and non-economic damages, including general, compensatory, consequential, and incidental damages;

c.      An order for an award of attorney fees and costs, as provided by law;

d.      An award of pre-judgment and post-judgment interest as provided by law;

e.      Equitable or injunctive relief;

f.      Compensatory damages according to proof including, but not limited to:

         i.      Costs associated with the remediation or abatement of PFAS chemicals in sources of raw water;

         ii.      Costs associated with treating raw water contaminated with PFAS;

         iii.      Costs associated with any soil remediation of PFAS;

         iv.      Diminution of property value caused by PFAS contamination;

g.      Punitive damages for Defendants' willful, wanton, malicious, and/or reckless conduct causing Plaintiff's injuries;

h.      An award of punitive damages in an amount sufficient to punish Defendants and to deter Defendants from engaging in similar wrongful conduct in the future; and

i.      An order for all such other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues in the matter.

Dated, this the 11th day of October, 2023,

                       Respectfully submitted,

Attorneys for the Plaintiff

By:

/s/ T. Roe Frazer II
T. Roe Frazer II
Thomas Roe Frazer III
**FRAZER PLC**
30 Burton Hills Boulevard, Suite 450
Nashville, Tennessee 37215
(615) 647-0990
roe@frazer.law
trey@frazer.law


/s/Agostinho Riberio
Agostinho Riberior
Nicole L. Barber
Ventura Law
235 Main Street
Danbury, CT 06810
(203) 800-8000
augie@venturalaw.com
nicole@venturalaw.com